[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10480
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00159-TPB-NPM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUGUSTIN DALUSMA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 30, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Augustin Dalusma appeals his total 97-month sentence of imprisonment after a jury convicted him of 12 counts of making false claims to the Internal Revenue Service ("IRS") and 3 counts of filing fraudulent tax returns. He argues that his sentence was substantively unreasonable because the district court improperly weighed the 18 U.S.C. § 3553(a) sentencing factors and failed to consider his downward variance request. After review, we affirm.

I.    Background

A jury convicted Dalusma of all charges in a 15-count indictment for making false claims to the IRS and filing fraudulent tax returns.[1] Dalusma's guidelines range was 97 to 121 months' imprisonment. Each of the false claims counts carried a maximum term of five years' imprisonment and each of the fraudulent tax return counts carried a maximum term of three years' imprisonment.

Prior to sentencing, Dalusma filed a memorandum requesting a downward variance sentence below the applicable guidelines range.[2] He asserted that he was 58 years old, did not have any prior contact with the criminal justice system, and had strong familial and community relationships, which were all indicators that his likelihood of recidivism was low and that he was not a danger to the public. He

_____

[1] Between 2012 and 2015, Dalusma engaged in an income tax return scheme for which the IRS paid out over $2 million. And between 2013 and 2015, Dalusma filed personal tax returns that did not reflect his accurate income and evaded over $100,000 in taxes.

[2] Dalusma's memorandum also raised various objections to the guidelines calculation, which the district court overruled at sentencing.

2

further argued that the collateral consequences of his sentence at his age would also serve as a long-lasting punishment because his imprisonment would have permanent political, economical, and social consequences.

At the sentencing hearing, the government argued that any sentence within the guidelines range would be appropriate, and it deferred to the court's judgment as to the appropriate specific sentence within the applicable range. It also requested that the court impose concurrent three-year terms of supervised release for each of the false claims counts.

A member of the church where Dalusma served as a pastor, Dalusma's youngest son, and a fellow pastor spoke on Dalusma's behalf. The member of the church discussed Dalusma's work as a pastor, describing his kindness, his mentorship, and how he was a spiritual and community leader. Dalusma's son testified that his father was an involved and supportive father, who was a loved and important member of their family, and that he was very missed. Lastly, the pastor explained that Dalusma was a great father, husband, and church and community leader.

Dalusma then addressed the court himself, emphasizing how grateful he was for his family's support during the trial and how important his family, his role as a local pastor, and his community were to him. He explained that he started his tax business to help his community, and that he made the mistake of not doing his due

diligence to make sure that he was doing "everything the right way." He expressed a great deal of remorse and apologized to the IRS and the court, and he asked for forgiveness. He also thanked the IRS, the court, the prosecutor, his attorney, and all court employees for "the time you have taken during this judgment."

Finally, Dalusma's counsel reiterated the request for a downward variance, emphasizing Dalusma's age, lack of any prior criminal history, and low risk of recidivism. He urged the court to "take stock of the better things about [Dalusma] and about his life[] and adjust the sentence appropriately."

The district court noted that "[t]his [was] one of the more difficult cases" because there was no doubt that, "[w]ith the exception" of the underlying criminal acts, Dalusma had "led an exemplary life" and was "a good person" who "did a bad thing." Nevertheless, the district court noted that by stating this crime was the result of a "mistake" Dalusma had not accepted responsibility for his intentional decisions "to do this over, and over, and over." The district court then explained that, after considering the guidelines and the § 3553(a) factors, a total sentence of 97 months' imprisonment[3] was "sufficient but not greater than necessary to comply with the statutory purpose of sentencing." The district court noted that the

---

[3] Specifically, the district court sentenced Dalusma to concurrent terms of 60 months' imprisonment as to Counts 1 through 11, concurrent terms of 36 months' imprisonment on Counts 13 through 15, and a term of 37 months' imprisonment as to Count 12, to run consecutively with the other counts.

4

sentence was at the low end of the guidelines range in recognition of Dalusma's

lack of a criminal history, the fact that he was not a danger to society, and that he

had led an otherwise exemplary life.  Dalusma timely appealed.

## II.    Discussion

Dalusma argues that his total 97-month sentence is substantively

unreasonable because the district court failed to consider his motion for a

downward variance and to consider adequately and properly weigh the § 3553(a)

factors.

"Generally, when a district court recognizes its authority to grant a variance,

we review for abuse of discretion its decision not to grant a downward variance."

*United States v. Cabezas-Montano*, 949 F.3d 567, 610 (11th Cir. 2020).  "The

district court has considerable discretion in deciding whether the § 3553(a) factors

justify a variance and the extent of such a variance."  *Id.* (alteration adopted)

(quotation omitted).  And "[w]e give that decision due deference because the

district court has an institutional advantage in making sentencing determinations."

*Id.* (quotation omitted).

Similarly, we review the reasonableness of a sentence under a deferential

abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 41 (2007).  The

district court must issue a sentence that is "sufficient, but not greater than

necessary" to comply with the purposes of 18 U.S.C. § 3553(a)(2), which include

the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a). The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* § 3553(a)(1). "[T]he district court need only 'acknowledge' that it considered the § 3553(a) factors, and need *not* discuss each of these factors . . . ." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) (quotation and internal citation omitted). We examine whether a sentence is substantively reasonable in light of the totality of the circumstances. *Gall*, 552 U.S. at 51.

A district court abuses its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) "commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotation omitted). Because such an abuse of discretion infrequently occurs, "it is only the rare sentence that will be substantively unreasonable." *Id.* (quotation omitted). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.* We will "vacate the sentence if, but only if, we 'are left with the definite and firm

6

conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case.'" *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quoting *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008)).

Dalusma's argument that the district court failed to consider his motion for a downward variance is belied by the record. Although the district court did not expressly overrule the motion for a downward variance, it implicitly overruled the motion when it imposed a sentence at the bottom of the guidelines after hearing Dalusma's argument for a downward variance at sentencing. There is no indication that the district court was unaware that it had the authority to impose a downward variance, and its decision not to do so is entitled to deference. *Cabezas-Montano*, 949 F.3d at 610.

Furthermore, Dalusma's sentence is not substantively unreasonable. The record confirms that the district court considered the § 3553(a) factors and even commented on how difficult its decision was because of Dalusma's otherwise exemplary life. Although Dalusma quarrels with how the district court weighed the factors, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quotation omitted). The district court was entitled

7

to give more weight to the nature and circumstances of the offense over Dalusma's mitigating circumstances, and he has not established that the district court erred in its consideration of the relevant factors. *See Rosales-Bruno*, 789 F.3d at 1256; *Clay*, 483 F.3d at 743. Moreover, Dalusma's total 97-month sentence is within the guidelines range which is an indicator of reasonableness. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect [such a sentence] . . . to be reasonable." (quotation omitted)). Accordingly, we conclude Dalusma's sentence is substantively reasonable and affirm.

**AFFIRMED.**